SAMUEL D. PLATT'S APPEAL FROM PROBATE.

Hartford Dist., Jan. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, JS.

In setting out dower the distributors may set it out in such part of the real estate as will be most advantageous to the widow.

And where there are several pieces of land they may set it entirely in one of the pieces.

And where there are several pieces and a part are incumbered by mortgages, they may set the dower wholly in an unincumbered piece.

And in determining what is one third in value to be set out to her in such unincumbered piece, the equity of redemption of the incumbered pieces is to be valued, and not the land independently of the incumbrances.

And where one of the incumbered pieces is mortgaged for more than its value, the excess of the debt is not to be taken out of the value of the equities of the other pieces. The piece is to be laid wholly out of the case as of no value.

Where dower is to be set out in a single piece of real estate which is incumbered by a mortgage, it is to be set out without reference to the mortgage, the part set to the widow being subject to the mortgage.

[Argued January 4th—decided June 2d, 1888.]

APPEAL from a probate decree accepting an assignment of dower made by distributors appointed by the court, on the estate of Joseph S. Titus, deceased; taken to the Supe-

rior Court in Litchfield County, and heard before *Andrews, J.*
The court made the following finding of facts.

Joseph S. Titus died on the 16th day of January, 1884.
He left a widow, to whom he was married in 1845. He left
a will, but his widow declined to accept the provisions there-
in made for her and claimed dower.

At the time of his death Mr. Titus was seized and in pos-
session of the following real estate in the town of Washing-
ton in this state, where he lived :—The homestead with the
buildings, worth $2,100 ; the West Hill land, thirty acres,
worth $1,500 ; the Canfield lot, so called, twelve acres,
worth $450 ; a building lot worth $90 ; a horse shed worth
$60.

The West Hill land was subject to a mortgage to D. C.
Whittlesey to secure a debt then amounting to about $330.
The Canfield lot was subject to a mortgage to May E. Can-
field, to secure a debt then amounting to about $650 ; there
were no other secured debts. The estate of Mr. Titus is
deeply insolvent.

On the 21st day of December, 1885, May E. Canfield
brought her complaint to the Court of Common Pleas for
Litchfield County claiming a foreclosure of the piece of
land mortgaged to her. The widow and all the heirs of
Mr. Titus were made parties thereto, and the same was duly
served on them. That court at its May term, 1886, rendered
a judgment of foreclosure in the case and fixed the time of
redemption on the first Monday of October, 1886.

The court of probate for the district of Washington ap-
pointed persons to set out dower to the widow of Mr. Titus,
who set out the same wholly in a part of the homestead, and
made their report to the court. The part so set to her was
free from incumbrance.

In determining what dower should be set out the distrib-
utors disregarded the mortgages upon the two other pieces
of land and valued these pieces at their full value. The
appellant claimed and asked the court to decide that the
distributors in determining the dower should have appraised
these pieces of land only at the value of the equity of re-

demption therein and not at their full value. The court did
not so decide.

If the distributors acted correctly in taking the value as
above set forth, then the distribution is not unequal or un-
just. Otherwise there is set to the widow more than one
third part of the real estate.

From this judgment the appellant appealed to this court.

*J. Huntington* and *A. D. Warner*, for the appellant.

1. It was the duty of the distributors to deduct the amount
of the mortgage incumbrances from the value of the real
estate of the deceased, and the residue should have been
the amount upon which they should have based the value of
the dower; but they in determining what value of dower
should be set out to the widow disregarded the mortgages
and regarded the land at its full value. The widow is enti-
tled to dower during her life in one third part of the real
estate of which her husband died possessed in his own right.
Gen. Statutes, § 618. " By our law the right to dower takes
its origin at the husband's death, and gives to the wife no
lien upon, or right legal or equitable to, the husband's estate
during life. Her condition in this respect is like that of her
husband's children or other heirs, and the only right of either
is to such estate as he has not disposed of." *Stewart* v. *Stew-
art*, 5 Conn., 317, 321. " The statute in plain language
limits the right of the doweress to estate possessed by the
husband at his death, instead of giving her dower in all the
lands of which he was seized during coverture, and this, we
think, is the whole change intended." *Husted's Appeal from
Probate*, 34 Conn., 488, 494. By the common law the widow
was not entitled to dower in mortgaged premises, but the
rule has been changed in this state, and the widow is enti-
tled to dower in the equity. *Fish* v. *Fish*, 1 Conn., 559,
563. In this state, before the assignment of her dower, the
widow is tenant in common with the heirs. *Wooster* v. *Hunts
Lyman Iron Co.*, 38 Conn., 256; *Greathead's Appeal from
Probate*, 42 id., 374. It follows, therefore, that she is ten-
ant in common, in the same and in no greater interest

in the estate than the heirs. It will not be questioned but that the interest of the heirs is subject to the mortgage incumbrances. " A widow who has joined her husband in a mortgage of land of which he was seized, thereby extinguishes her dower interest to the extent of the debt secured by the mortgage, and she is dowable only of the surplus." 2 Jones on Mortgages, 3d ed., § 1693, and note 5. The same rule will apply in this state where the law establishes the dower interest to be in the lands of which the husband dies possessed in his own right, and permits him to divest the dower interest by his individual act. 1 Scribner on Dower, 2d ed., 547, § 39. The distributors assigned the whole of the dower in one piece of the real estate, and that one unincumbered. " Where dower in one piece of property is assigned in another, there is a substitution of property, a *quid pro quo*, for the convenience of the parties." *Goodwin* v. *Goodwin*, 33 Conn., 314, 319. In the substitution in this instance, the distributors estimated the incumbered lands at their full value, which produced a very different result from what it would if the distributors had set out the dower in each piece separately; for then they could only set her a dower interest in the equity in the two incumbered pieces of land. We are sustained in our view of this subject by the statute relating to the sale of widow's dower interests. Gen. Statutes, § 601. The widow clearly can have no greater value in dower when assigned to her than she would receive by sale under the statutes.

2. The widow had no dower interest in the Canfield lot at the time of the distribution of the dower. The foreclosure proceedings were completed before the distribution, and she was made a party thereto as well as the heirs. The widow is barred of her right of dower in mortgaged premises by foreclosure proceedings before dower assigned. 1 Jones on Mortgages, § 666; 4 Kent Com., 45; 1 Scribner on Dower, 2d ed., 499.

*C. E. Gross*, with whom was *G. A. Hickox*, for the appellees.

1. The statute provides that "every woman living with her husband at the time of his death * * * shall have right of dower, during her life, in one third part of the real estate of which her husband died possessed in his own right." Gen. Statutes, § 618. At the time of his death the husband was seized of, and was in actual possession of, five pieces of real estate. Three were unincumbered, and worth $2,250. One was worth $1,500, and mortgaged for $330 ; and another was worth $450, and mortgaged for $650. The first question is— What estate had the deceased at the time of his death in the two pieces which were mortgaged ? By repeated decisions it is the well settled law of this state " that, except as between the immediate parties, the mortgagor before foreclosure is the owner of the property; that his interest is real estate to be conveyed, attached, taxed, and *inherited* only as such;" and that " the mortgagee has merely a lien upon the property for the security of his debt, by virtue of which he may obtain possession and appropriate the pledge in payment of his debt," an interest which is merely personal estate. *Porter* v. *Seeley*, 13 Conn., 572 ; *Cooper* v. *Davis*, 15 id., 559 ; *Lacon* v. *Davenport*, 16 id., 341 ; *City of Norwich* v. *Hubbard*, 22 id., 588 ; *Whiting* v. *City of New Haven*, 45 id., 305 ; *Waterbury Sav. Bank* v. *Lawler*, 46 id., 245. As against the mortgagee or his assigns the mortgagor in possession is not *seized and possessed*, but as against every one else he has the full title and seizin, except perhaps for one purpose, ejectment. The appellant is only a general creditor of the deceased, and holds no title under the mortgage. As against him Mr. Titus was possessed of the whole estate.

2. As against every one interested in the equity of redemption, the widow is endowed as of an unincumbered estate. 1 Scribner on Dower, 546, § 38, and notes ; *Hitchcock* v. *Harrington*, 6 Johns., 290, 295 ; *Collins* v. *Torrey*, 7 id., 278, 282 ; *Smith* v. *Eustis*, 7 Maine, 41 ; *Wilkins* v. *French*, 20 id., 111 ; *Hatch* v. *Palmer*, 58 id., 272 ; *Bullard* v. *Bowers*, 10 N. Hamp., 500 ; *Rossiter* v. *Cossit*, 15 id., 38 ; *Henry's Case*, 4 Cush., 257 ; *Draper* v. *Baker*, 12 id., 288 ; *Mathewson* v. *Smith*, 1 R. Isl., 22 ; *Hunsucker* v. *Smith*, 49

Ind., 114. "In recurring to dower in equities of redemption, it will be found that the law upon the subject is somewhat peculiar. It has a double aspect; as to all the world except the mortgagee and his assigns, *it is as if no mortgage had ever been made.* The mortgagor has the legal title in the land." 1 Washb. R. Prop., 182, § 16. "Where land was conveyed to the demandant's husband, and he mortgaged it back at the same time to secure the purchase money, the demandant, as against the mortgagee or assignee, is dowable of only an equity of redemption, but against all others she has a right of dower in the land." *Young* v. *Tarbell,* 37 Maine, 509. "But it is contended for the defendant that the term 'dower' used in the conditions of sale, meant the equitable right of dower that the widow had in the estate subject to the mortgage. As against the representatives of the mortgagor the widow was entitled to full dower, and he was the grantor; he it was who used the term 'dower.' The purchaser from him could take an interest only equal to that he represented. Had the widow prosecuted for her dower before the sale, would the mortgage have precluded her from recovering full dower? Certainly not. The right of dower to which the estate in the grantor's hands was liable, then, was full dower." *Mathewson* v. *Smith,* 1 R. Isl., 28.

3. The widow was legally entitled to have her dower set out to the full extent of one third in value of all the five pieces of real estate. This could have been done in each of the several pieces, or aggregated and set out in one, if any one was of sufficient value. *French* v. *Platt,* 27 Maine, 385; *Williams* v. *Williams,* 78 id., 84. A setting out of dower conveys no title. The right to dower comes into existence at the death of the husband, and rests upon the whole estate. The assignment of dower subsequently merely designates a particular portion of the estate to which the dower shall be confined. *Hewitt's Appeal from Probate,* 53 Conn., 36. "The law in England and in most of the Union differs from ours in respect to dower." *Wooster* v. *Hunts Lyman Iron Co.,* 38 Conn., 258. Before assignment, it is the well-

settled law of this state that the widow is, as to her dower interest, a tenant in common with the heirs. Under our statute, passed in 1736, our courts have always assigned to the widow her dower in such of the several pieces of land owned by her husband at his decease, as would be for her best interest.

4. Such a distribution is not inequitable nor against good conscience. The equities of the widow are far superior to those of any creditor or heir. *Crocker* v. *Fox*, 1 Root, 227. No right in Connecticut has been more jealously guarded by our courts, nor held more sacred, than a widow's dower or statutory rights. The strictest rules of construction are enforced in her favor, even to the result of disinheriting a child. *Security Co.* v. *Bryant*, 52 Conn., 311. No ordinary estoppel seems to be of avail against her, as a defense to her application for dower. *Hewitt's Appeal from Probate*, 53 Conn., 24. An allowance by the court to her for support cannot be garnisheed by her creditor. *Barnum* v. *Boughton*, 55 Conn., 117.

5. The dower is to be set out as of the day of the death of the husband. Subsequent transfers, whether by operation of law or by deed *inter partes*, do not change the form of the distribution. *Hewitt's Appeal from Probate*, 53 Conn., 37; *Williams* v. *Williams*, 78 Maine, 85. The foreclosure of the Canfield lot therefore had no effect on the widow's rights.

6. No injustice is done to the appellant by this distribution. He is a general creditor of the deceased. Even if he gave him credit on the strength of the real estate, he was chargeable with a knowledge of all the burdens which rested or might rest on the estate. To him it made no difference, so far as dower was concerned, whether all or none of the real estate was mortgaged. If any was exposed to the widow's dower, he was chargeable with knowledge of that fact, as well as with the knowledge of the mortgages themselves.

LOOMIS, J.   Joseph S. Titus died leaving a widow enti-

tled to dower. At the time of his death he was seized of and in the actual possession of real estate valued as follows, irrespective of incumbrances by mortgage :—The homestead with buildings, worth $2,100 ; the West Hill land, thirty acres, worth $1,500 ; the Canfield lot, twelve acres, worth $450 ; a building lot, worth $90 ; a horse shed, worth $60 ; total value, $4,200.

The West Hill lot was subject to a mortgage amounting to $330, and the Canfield lot to a mortgage amounting to $650. There were other debts unsecured and the estate was deeply insolvent. The court of probate for the district where the deceased last resided appointed distributors to set out dower to the widow, who attended to their duties, and set out by metes and bounds the dower, amounting in value to $1,400, in the homestead lot and buildings. This was one third the gross value of the five pieces of land, disregarding entirely the mortgages upon the land, amounting to $980. The probate court accepted this assignment of dower, and on appeal to the Superior Court it was affirmed.

The sole question is—whether the distributors, in determining the value of the dower interest to be assigned, should have deducted the amount of the mortgage incumbrances from the gross value of the real estate ; or, to state the question more accurately in reference to the facts of this case,—when dower is to be assigned wholly in one piece of unincumbered land, where it had also attached to other pieces subject to mortgage, ought the latter to be valued as equities of redemption. It is a mere question of valuation in order that a just substitution may be made. Had one third in value of each piece been assigned as dower no question could have arisen. It will be conceded by every one, as it was by the counsel for the appellees, that the latter mode would give the widow precisely one third of the real estate and consequently all she is entitled to. Does the mode adopted by the distributors produce the same result? If it does not, it would seem that there must have been error.

It is clear that it is impossible to reach the same result by

the two different modes suggested, where a part of the real estate as here consists of an equity of redemption and the estate is insolvent. ˙ Take a very simple illustration in order to make the point more easily apprehended. The real estate out of which dower is to be assigned consists of three separate lots, *A, B* and *C*, each ˙of the value of three thousand dollars. Lots *A* and *B* are each subject to a mortgage of three thousand dollars, but lot *C* is unincumbered. .The mode of valuation adopted in the case at bar would give the widow the whole of lot *C* for her dower. This in value is the entire estate, for no one can be compelled to lift the mortgages from lots *A* and *B*, and neither the widow nor any one interested would have any motive to do it. . On the other hand, if one third of each lot was given for dower, the widow would take one third of lot *C*, instead of the whole. Again, if the incumbrances are to be ignored, it must be just as legal to assign the widow's portion wholly in the incumbered lot *A* as in the unincumbered lot *C*, for the distributors on their oaths have given the same valuation to each lot. If then the logic of the appellees is correct, the distributors could give the widow her dower exclusively in lot *A*, although it is a mere equity of redemption and absolutely worthless under the incumbrance that is upon it.

But it may be suggested that the dower right is specially favored, and that therefore the widow may properly be given her dower in the unincumbered piece. The widow may, it is true, be given dower in an unincumbered piece, not exceeding a third part, and she may, in the discretion of the distributors, be favored to the extent of giving her the particular property most useful to her, but there can be no favoritism as to her proportion of the estate, and the security of the dower interest depends on this fact. The statute is precise and definite in defining the exact limit of the dower. right, it is " one third part of the real estate of which her husband died possessed in his own right." Gen. Statutes, § 618. It is never more than a third, nor less than a third, but precisely one third ; and this third part is not a

third part in square rods, but in fair and honest valuation.
1 Bishop on. the Law of Married Women, § 334. The coun-
sel for the appellees in their brief say :—" Mrs. Titus, the
widow, was legally entitled to have her dower set out to the
full extent of one third in value of all the five pieces of
real estate. This could be done in each of the several
pieces, or aggregated and set out in one, if any one was of
sufficient value ; " citing *Williams* v. *Williams*, 78 Maine,
84, and *French* v. *Platt*, 27 id., 385.

We fully accept both these propositions, but we insist
that when the estate consists in part of a mere equity of
redemption, the equity must be valued as such, and not as
an estate without any incumbrance. In this connection too
the principle announced in *Goodwin* v. *Goodwin*, 33 Conn.,
319, applies, that " where dower in one piece of property
is assigned in another there is a substitution of property, a
*quid pro quo*, for the convenience of the parties."

Recurring to our previous illustration, we ask—where is
the *quid pro quo*, when the unincumbered lot *C*, worth
$3,000, is substituted for lot *A*, where the incumbrance of
$3,000 renders the lot absolutely worthless ?

Again, our view of the law in regard to the valuation of
equities of redemption in assigning dower, derives strong
confirmation from the statutes that have been passed and
their mode of execution, providing for the sale of equities
of redemption subject to dower. The wording of the stat-
utes has within a few years been somewhat changed, but the
meaning obviously remains the same. In order however to
show more clearly how dower in an equity of redemption
was regarded we will cite the statute as it was originally
passed in 1839, and which remained many years unchanged.
We cite it as found in the Compilation of 1854, page 498,
section 40. " Whenever it shall be necessary that any real
estate of a deceased person, which is incumbered by a mort-
gage, and is subject to the widow's dower, should be sold
for the payment of debts, the court of probate having juris-
diction of the estate may, with the consent of the widow,
certified in writing, * * * order the sale of the whole equity

of redemption without excepting the right of dower, and the sale being made and the avails ascertained, said court may order the value of the widow's interest in the equity of redemption to be deducted from said avails and paid over to her in lieu of dower therein, said value having been first assessed by said court, or by one or more disinterested and judicious persons under oath, appointed by said court for that purpose."

It would seem very plain that under this statute the equity of redemption as such was to be sold, and the widow's interest in the equity was to be valued and deducted from the avails. Suppose under this statute the estate consisted of a piece of land the entire value of which was twelve thousand dollars, but it was subject to a mortgage of nine thousand dollars, and it should be sold for three thousand dollars, would it not seem very absurd as well as unjust, to ascertain the dower interest by dividing $12,000 by three—thus producing a sum more than sufficient to absorb the entire avails of the sale?

The question under consideration has never been passed upon by this court, nor by the Superior Court so far as we can ascertain. In the early history of our own law it was a subject of contention whether we should adopt the doctrine of the English courts, that dower could not be given in an equity of redemption. The reason given for such a doctrine was, that the husband must have been seized of the land to entitle his widow to dower and that in every mortgage of a fee the seizin was in the mortgagee; but while so holding as to dower, a very different principle seems to have been applied to the corresponding right of curtesy in the husband, for the same courts held that the right of curtesy would attach to an equity of redemption in the wife, thus treating it as an estate and not merely as a right. But this court at an early day, in *Fish* v. *Fish*, 1 Conn., 559, refused to accept the English doctrine, for the sound reason that, as between the mortgagor or his representative and any other person except the mortgagee or his representative, the mortgagor is to be

deemed the owner with seizin in himself; and such is now the prevailing doctrine in the courts of the United States.

When we established the doctrine that dower could be given in an equity of redemption and that the widow's right of dower does not attach till the husband's death, it would seem most natural to value the equity rather than the land, in all cases where this is necessary to determine what constitutes a third part in value. In many, we may say in most cases, this becomes immaterial. Of course the dower right cannot be assigned and separated from the other rights in the estate except by establishing metes and bounds on the land, and it is so assigned for the very purpose of showing to what particular part of the estate the life use of the widow attaches. It follows therefore that where dower is to be assigned in a single piece of land subject to mortgage, the land itself should be valued and one third in value assigned subject to the mortgage. This is the only practicable way of giving one third the equity, and if by any means the mortgage incumbrance shall be removed, the widow may thereafter enjoy her dower as though there had been no incumbrance. So that our reasoning as to the mode of valuation applies merely to cases of substitution, like the one at bar, to cases of sales of the equity subject to dower, and to cases where no one can be compelled to pay the mortgage debt and remove the incumbrance.

If we seek confirmation of our position from decisions in other jurisdictions we shall find only a few cases that throw any light directly upon the point in question. In most of our sister states the common law doctrine prevails, that dower attaches to all the real estate of which the husband was seized during his life, so that there are comparatively fewer cases than with us, where the mortgage incumbrance is paramount to dower. In such cases however the principle for which we contend has been recognized.

In 2 Jones on Mortgages, 3 ed., § 1693, note 5, it is said that "a widow who has joined her husband in a mortgage of land of which he was seized, thereby extinguishes her dower interest to the extent of the debt secured by the

mortgage, and she is dowable only of the surplus." In this state the widow under our law occupies the same position, for the act of the husband alone during his life is just as effective in divesting the dower interest as the concurrent acts of both are in the other states.

In 1 Scribner on Dower, 2d ed., p. 595, § 24, it is said that "where the husband has mortgaged his lands at a date anterior to the marriage, his wife is dowable only of the equity of redemption." And in the second volume, p. 696, it is said that "if the lands of the husband are subject to an incumbrance paramount to dower, the burthen is to be apportioned between the widow and the owner of the inheritance."

In *Hartshorne* v. *Hartshorne*, 1 Green's Ch., 349, the rule is stated as follows:—"If the husband before marriage, or in conjunction with the wife after marriage, execute a mortgage, the widow can only have her dower subject to such mortgage; and if the mortgage be foreclosed and a sale made, the widow's rights are barred except to the surplus after satisfying the mortgage. If the purchaser of the equity of redemption takes an assignment of the mortgage, the debt is not thereby merged or extinguished, and the widow is entitled to her dower in the equity of redemption only, subject to the mortgage." See also *Baker* v. *Fetters*, 16 Ohio St., 596; *Tucker* v. *Field*, 51 Miss., 191.

The principle contended for has been frequently recognized in other states in those cases where, upon foreclosure of mortgages to which the widow's dower was subject, the entire premises have been sold and the avails distributed. In *Hawley* v. *Bradford*, 9 Paige, 200, it was held that "where the wife joins her husband in a mortgage of his real estate, she is not entitled to have the mortgage satisfied out of the husband's interest in the premises exclusively, so as to give her dower in the whole premises notwithstanding the mortgage and not in the equity of redemption merely. Thus, where the mortgaged premises are sold under the mortgage, the wife is only entitled to be endowed of the surplus which remains after payment of the mortgage debt."

In *Tabele* v. *Tabele*, 1 Johns. Ch., 45, it was held that the widow was entitled to the use or interest of one third the surplus proceeds of the sale of the mortgaged premises. See also *Jennison* v. *Hapgood*, 14 Pick., 345.

The foreclosure of the Canfield lot after dower had attached does not affect any of the questions in the present case. To avoid misapprehension however as to the mode of estimating the value of the dowable interest in the severable pieces of land subject to mortgage, it ought to be stated that where the mortgage incumbrance exceeds the entire value of the land on which it is placed, as in the case of the Canfield lot, where the value was $450, and the incumbrance was $650, the excess of incumbrance is not to be deducted from the value of the equity in the other pieces. The equity in the Canfield lot was of no value.

There was error in the judgment complained of and it is reversed.

In this opinion the other judges concurred.